292 N.J. Super. 417 (1996)
678 A.2d 1178
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL N. KOUVATAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 4, 1996.
Decided July 23, 1996.
*419 Before Judges PRESSLER, WEFING and KOLE.
Richard C. Borton and Michael N. Kouvatas, attorneys for defendant-appellant (Richard C. Borton, Esq., on the brief).
Morris G. Smith, attorney for plaintiff-respondent (Marc A. Riondino, Esq., on the brief).
The opinion of the court was delivered by KOLE, J.A.D. (retired and temporarily assigned on recall).
Notices of violation of the Uniform Fire Safety Act, N.J.S.A. 52:27D-192 to 213, were filed by the City of Camden Fire Marshal's Office on December 6, 1993,[1] against defendant Michael Kouvatas. The violations were for premises owned by defendant known as Market Street East located at 227-229 Market Street, Camden, New Jersey. The notices of violation stated that the rear second and third floor fire escapes were "in deplorable condition" and were "not being properly maintained" contrary to N.J.A.C. 5:18-3.5. Defendant was ordered to pay a $1,000.00 fine or penalty.[2] Defendant also received a summons and complaint to *420 appear in Camden City Municipal Court on January 11, 1994, for the violation of N.J.A.C. 5:18-3.5. At the time of the violation notices and summons, the property was leased to a restaurant operated by Robert DiSipio.
The violations notices and orders instructed defendant that a request for an appeal or hearing must be made in writing within fifteen days after receipt of the orders.[3] The notices incorrectly informed defendant that the request for hearing should be addressed to the City of Camden Fire Marshal's Office. In accordance with this information, defendant sent a certified letter dated December 20, 1993, to the Fire Marshal's Office requesting a hearing to appeal the violations. In a letter dated December 27, 1993, the City of Camden Fire Department informed defendant that he "must file such appeal, in writing, to the Camden County Board of Appeals ..." In a letter dated January 10, 1994, defendant requested a hearing from the Camden County Construction Board of Appeals (Board). The Board, in a letter dated February 7, 1994, rejected the request for a hearing as not being made within the fifteen-day period for requesting a hearing. Though defendant continued attempts to obtain a hearing on the violations, no hearing was held.
On April 26, 1994, a Notice of Code Violation and Order to Pay Penalty was issued by the Fire Marshal in the amount of $700,000.00. The penalty was issued because defendant had not complied *421 with the December 6, 1993, order to vacate the second and third floors of the premises. Defendant then requested an appeal of the fine to the Board within a fifteen-day period. A hearing date of July 6, 1994, was eventually set by the Board. The hearing was canceled by the Board and never rescheduled. No explanation is provided as to why the Board never rescheduled the hearing. However, the Camden City Attorney's Office, in a letter dated July 15, 1994, requested that the Board dismiss the administrative appeal, or stay the action until the municipal court matter could be resolved. Defendant opposed the dismissal in a letter dated July 19, 1994, but no response was received from the Board. In the end, defendant never received a hearing on the merits from the Board on any of the violations, or the $700,000.00 or any other penalty.
The municipal court hearing on the summons and complaint was delayed until March 3, 1995. The reasons causing the delay include: defendant's illness; the proceedings' being continued pending the administrative hearing; and a motion to dismiss the municipal court complaint for failure to provide discovery. At the March 3, 1995 municipal court proceedings, the court continued the proceedings to a firm trial date of May 2, 1995, since the city was not ready.
On May 2, 1995, in a hearing before the municipal court, instead of proceeding on the merits of the fire code violation complaint before that court, the city reduced the $700,000.00 penalty to $5,000 and sought summary enforcement thereof under N.J.S.A. 2A:58-1.[4] This was the first time that the city had given notice that it was going to seek summary enforcement of a penalty without a trial by the municipal court of the merits of the actual complaint before it. In response, the municipal court judge asked if defendant had received notice of the imposition of a penalty. *422 Defense counsel stated that notice was received, that an appeal had been made to the Board, and that the appeal was never heard.
The court then stated that "as I understand it I really don't have any control or any alternative but to say yea or nay [to enforcement of the penalty] and figure out how you're going to pay it. That's where it stands. If you plea[d] surprise I really don't know if that's effective ... [I]t's my understanding that I really have no alternative. I don't have a right to look beyond the penalty that has been imposed and to enforce it. And that's exactly what I'm going to do. I am going to impose a $5,000 penalty as requested be imposed by the Fire Marshal's Office in accordance with the State Enforcement Summary Penalty Enforcement Act ... I make no finding as to whether or not the appeal before the Board of Appeals was proper or not proper."
The municipal court did suggest that for the sake of brevity and convenience, everything be dismissed without prejudice and a new citation issued. However, the city asserted that it would be prejudiced by this action, since defendant had ample opportunity to fix and abate the situation and he was still in violation. In any event, because the property was vacant at the time, the city moved to dismiss the underlying complaint charging a fire code violation  apparently involving the $700,000 penalty  without prejudice. It was so dismissed by the municipal court.
Defendant appealed to the Law Division of the Superior Court. The Superior Court judge ruled that, consistent with State Dept. of Community Affairs v. Wertheimer, 177 N.J. Super. 595, 427 A.2d 592 (App.Div. 1980), it did not have the authority to remand the controversy to the municipal court for a trial on the merits, as requested by defendant. If anything, he stated, defendant should have sought relief from the Chancery Division to have the Board's determination set aside.[5] The court held that the municipal court *423 acted properly and affirmed its determination.[6] This appeal followed.
We hold that defendant was denied his right to due process and a fair hearing as to whether he was in violation of the statute and regulations involved herein, as well as the amount of the penalties imposed; and that the city is estopped from enforcing the penalties against him.
The Supreme Court has held that the minimum requirements of due process include:
(a) written notice of the claimed violations ... (b) disclosure ... of evidence ... (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body ... members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons [for acting].
[Nicoletta v. No. Jersey District Water Supply Commission, 77 N.J. 145, 165, 390 A.2d 90 (1978).]
Stated more concisely, "[t]he essential components of due process are adequate notice, opportunity for a fair hearing and availability of appropriate review." Wertheimer, supra, 177 N.J. Super. at 599, 427 A.2d 592.
There is no doubt here that defendant never received a "fair hearing" on the merits of the violations or the penalties imposed.
The Board did not hear defendant's appeal of the violations, since the request for a hearing was not received by it within *424 the fifteen-day appeal period. N.J.S.A. 52:27D-206. The Board had no authority to entertain a request for a hearing not submitted in accordance with the time period established by statute. Wertheimer, supra, 177 N.J. Super. at 599, 427 A.2d 592.
Further, courts in summary enforcement proceedings do not have the authority to conduct independent fact finding hearings as to the validity of the penalties, where the violations have not been contested by the defendant. Wertheimer, supra, 177 N.J. Super. at 600, 427 A.2d 592.[7]
The process in place for fire code violations contains all the necessary elements for due process. There are notice procedures, procedures for a hearing on the merits by the Board, and review of the Board's decision by a court of competent jurisdiction. If defendant here were simply tardy in filing an appeal, there would be no issue as to due process. But it is the city's involvement in misleading defendant as to where the hearing appeal should be filed, that ultimately denied him due process. As a result, he never had a hearing on the merits of the violations or penalties, despite his good faith request therefor.
The city plainly contributed to defendant's delay in filing a timely appeal with the Board. By providing defendant with notices that informed him to appeal the violations with the wrong party  the Fire Marshal , the city caused defendant's untimely application to the Board. The city's attempt to distance itself from this fact by asserting that defendant did not take the proper measures to require the Board to hear this matter, is meritless. Defendant relied in good faith on the city's representations to his detriment.
The city is estopped by such conduct from endeavoring to enforce its order.

*425 Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment. Generally, its elements are a representation (or misrepresentation), knowledge that a second person is acting on the basis of that representation, and substantial detrimental reliance by the second person. In such circumstances the first person is prohibited from repudiating the truth of his representation.
[Atlantic City Housing Auth. v. State, 188 N.J. Super. 145, 149, 456 A.2d 534 (Ch.Div. 1983), aff'd, 193 N.J. Super. 176, 472 A.2d 612 (App.Div. 1984) (citation omitted).]
While equitable estoppel is rarely invoked against public entities, it may be invoked, as here, to prevent manifest injustice. See W.V. Pangborne & Co. v. N.J. DOT, 116 N.J. 543, 553-554, 562 A.2d 222 (1989); Hill v. Bd. of Adjust., Bor. of Eatontown, 122 N.J. Super. 156, 299 A.2d 737 (App.Div. 1972). "In simple language, estoppel will be applied against a municipality in the interest of equity and essential justice. Morality and common fairness clearly dictate that course." Hill, supra, 122 N.J. Super. at 164-165, 299 A.2d 737. See also, Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 354 A.2d 87 (App.Div. 1976). Thus, a municipality may not misinform or mislead a party about compliance with the law and subsequently deprive such person of a right as a result of its actions.
Here, the enforcement of the time limitation for an appeal denied defendant his constitutional right to due process of law by reason of the city's misleading information to him as to where to file an appeal. Nor is there any showing by the city of prejudice to it had a hearing on the merits been held. The fact that defendant had ample time to abate the claimed violation but did not do so, as claimed by the city, does not show prejudice to it, particularly in view of the fact that the city dismissed the substantial fire statute violation in the municipal court.
Accordingly, the city is estopped from enforcing the $5,000 penalty against defendant.
We note that the court below erred in requiring defendant to seek relief, under the facts of this case, in the Chancery Division. Under our unified court system it should have either *426 scheduled a hearing before it on the merits of the violations and penalties or remanded the matter to the Board for that purpose. See O'Neill v. Vreeland, 6 N.J. 158, 165, 167, 77 A.2d 899 (1951); Boardwalk Properties v. BPHC, 253 N.J. Super. 515, 526, 602 A.2d 733 (App.Div. 1991); Stamen v. Metropolitan Life Ins. Co., 41 N.J. Super. 135, 140, 124 A.2d 328 (App.Div. 1956).
We reverse the judgment below and vacate the $5,000 penalty, without prejudice, of course, to the city's further inspection of defendant's premises and citation, if any, for any violations then found.
NOTES
[1] The notices received by a defendant consist of a Notice of Violation and Order to Correct, Notice of Code Violation and Order to Pay Penalty ($1,000.00 fine), Notice of Imminent Hazard and Orders of the Fire Official (defendant to vacate the second and third floor by 4:00 p.m., December 6, 1993), and Notice of Violations and Order to Correct Violations (requiring that the violation be corrected by December 7, 1993).
[2] N.J.A.C. 5:18-2.12 Penalties

(a) The Commissioner or a local enforcing agency may assess, levy and collect penalties to ensure compliance with the fire code. No penalty shall be imposed except upon issuance of a written order requiring abatement and the allowance of a reasonable specified period in which to comply, unless clear notice of the violation otherwise exists....
....
(f) If a penalty order has not been satisfied by the 30th day after its issuance, the Commissioner or local enforcing agency may institute a civil penalty action by a summary proceeding under the Penalty Enforcement Law (N.J.S.A. 2A:58-1 et seq.) in the Superior Court or municipal court.
[3] N.J.S.A. 52:27D-206 (a). A person aggrieved by a ruling, action, order, or notice of the commissioner pursuant to [the Uniform Fire Safety Act] shall be entitled to an administrative hearing. The application for the hearing shall be filed with the commissioner by the 15th day after receipt by the person of notice of the ruling, action, order or notice.
[4] Any penalty imposed by any statute heretofore or hereafter enacted, which by direction or authority of such statute may be collected or enforced by summary proceedings or in a summary manner may be collected and enforced in summary proceedings pursuant to this chapter and the rules of the supreme court.
[5] The judge noted that if the Board fails to act, "it's deemed to be a denial for purpose [cause]." N.J.S.A. 52:27D-127(b) provides that the board shall hear the appeal, render a decision thereon and file its decision with a statement of the reasons therefor with the enforcing agency from which the appeal has been taken not later than 10 business days following the submission of the appeal, unless such period of time has been extended with the consent of the applicant. "Failure by the board to hear an appeal and render and file a decision thereon within the time limits prescribed in this subsection shall be deemed a denial of the appeal for purposes of a complaint, application or appeal to a court of competent jurisdiction."
[6] After the determination by the Law Division, defendant sought relief in the Chancery Division but that relief was denied. No appeal is taken from that action.
[7] In Wertheimer, unlike the present case, defendant never sought an administrative review during the appeal period and until long after the assessment of fines and penalties had become an accomplished fact. He never made a timely request for an administrative hearing. 177 N.J. Super. at 600, 427 A.2d 592.